2019 PA Super 182

| | | |
|---|---|---|
| S.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.J. | : | No. 653 WDA 2018 |

Appeal from the Order April 26, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD09-002095-008

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

OPINION BY SHOGAN, J.:                                              FILED JUNE 10, 2019

Father, S.S., appeals pro se from the order denying his petition for modification of custody with regard to his two daughters, C.M.S., born in June of 2006, and C.B.S., born in April of 2009 (collectively "Children"), who are now living with their Mother, T.J., in South Carolina.  We affirm.

The trial court set forth the background of this case as follows:

[Mother and Father married in 2001.]  The parties have been divorced since 2010.  [Initially, the parties shared custody of Children, with Mother having primary physical custody.]  They initially struggled to make their way as a separated family, resulting in Mother filing a number of Protection from Abuse petitions after custody exchanges became confrontational. [Mother sought to relocate with Children to South Carolina with her fiancé.]  By the time of the hearing on Mother's Relocation petition in September of 2017, however, the parties had gotten past the emotions which had led to physical altercations and, instead, were focused on what was best for the children.

_____

*   Retired Senior Judge assigned to the Superior Court.

At the time of the relocation hearing, [C]hildren were in Mother's primary care. Father exercised weekend custody and played a major role in the lives of his children. Mother proposed relocation in order to follow her fiancé who had been transferred to South Carolina and to advance her career as a real estate agent. After [the] hearing, [the trial court] determined that relocation with Mother was in [C]hildren's best interest, with liberal contact and custody being provided for Father. [The trial court's September 27], 2017 Order awarded Mother primary physical custody during the school year, with Father exercising summer custody as well as long weekends and holidays.

The Order further provided [C]hildren daily phone, text, or Skype contact with the non-custodial parent, which contact was to be encouraged and not interfered with by the parent exercising custody. The Order required the parents to use common sense when scheduling calls and provided that the calls should not be "excessively frequent or too long in duration that they disrupt the child's schedule." [Father did not take an appeal from the September 27, 2017 order.]

In late November of 2017, Father initiated an investigation by the South Carolina [D]epartment of Social Services, alleging the girls were being neglected and mistreated. Father alleged he learned of the abuse from his children. ([N.T., 4/25/18, at] 4). The accusations were determined to be unfounded and the case was closed. ([Id. at] 4[8]-49).

In his Petition for Modification of Custody [filed on December 7, 2017], Father alleged that Mother was improperly limiting his phone contact with the girls to 30 minutes in retaliation for the child abuse investigation. ([Id. at] 5). He also alleged that the girls are fearful, are being beaten by Mother, and are intimidated and threatened by her fiancé. ([Id. at] 5-9).

At the hearing on this matter, Father appeared pro se and Mother was represented by counsel. Mother and the girls testified by phone from South Carolina. [On April 26, 2018, the trial court] entered an Order denying Father's modification petition. [The trial court] found [its] analysis of both the relocation factors of 23 Pa.C.S.A. 5337(h) and the custody factors of 23 Pa.C.S.A. 5328 only several months before this hearing were still applicable. [The trial court] did not find Mother to be in contempt, but directed that telephone calls could exceed 30 minutes "using common sense."

[The trial court] also directed Mother to enroll both girls in counseling to help them cope with their issues regarding separation from the Father.

Trial Court Opinion, 7/2/18, at 2-3. Father filed this timely pro se appeal. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father presents the following issues for our review:

A. WHETHER THE LOWER COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR OF LAW IN WEIGHING THE FACTORS BY GRANTING THE MOTHER PRIMARY CUSTODY OF THE CHILDREN?

B. WHETHER THE LOWER COURT PROPERLY APPLIED THE FACTORS IN ANALYZING THE BEST INTERESTS OF THE CHILDREN?

C. WHETHER THE LOWER COURT DEVIATED FROM APPLICABLE STANDARDS IN ESTABLISHING A SCHEDULE OF WHEN THE FATHER WOULD BE ABLE TO HAVE [PHYSICAL] CUSTODY OF THE CHILDREN INDIVIDUALLY AND TOGETHER?

Father's Brief at 5.

Before addressing the merits of Father's issues, we must determine whether those issues are properly before us. The trial court has asserted that Father's Pa.R.A.P. 1925(b) statement is not concise and required the trial court to guess at the issues being presented. We agree.

A concise statement of errors complained of on appeal must be specific enough for the trial court to identify and address the issues the appellant wishes to raise on appeal. Commonwealth v. Reeves, 907 A.2d 1, 2 (Pa. Super. 2006) (quoting Lineberger v. Wyeth, 894 A.2d 141, 148 (Pa. Super. 2006)). Pennsylvania Rule of Appellate Procedure 1925 provides that a Rule 1925(b) statement "shall concisely identify each ruling or error that the

appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). See also Commonwealth v. Lopata, 754 A.2d 685, 689 (Pa. Super. 2000) (stating that "[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal").

This Court has considered the question of what constitutes a sufficient Pa.R.A.P. 1925(b) statement on numerous occasions and has established that "[an] appellant's concise statement must properly specify the error to be addressed on appeal." Commonwealth v. Hansley, 24 A.3d 410, 415 (Pa. Super. 2011). "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." Id. (brackets, internal quotation marks, and citation omitted).

The compulsory requirement of adhering to Pa.R.A.P. 1925 is captured in the following excerpt from Kanter v. Epstein, 866 A.2d 394 (Pa. Super. 2004):

> In Commonwealth v. Lord, 553 Pa. 415, 719 A.2d 306 (Pa. 1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pennsylvania Rule of Appellate Procedure] 1925." Lord, 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." Id. This Court explained in Riley v. Foley, 783 A.2d 807, 813 (Pa. Super. 2001), that Rule 1925 is a crucial component of the appellate process

because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." Commonwealth v. Dowling, 778 A.2d 683, 686-[6]87 (Pa. Super. 2001). "Even if the trial court correctly guesses the issues Appellants raise[] on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." Commonwealth v. Heggins, 809 A.2d 908, 911 (Pa. Super. 2002).

Kanter, 866 A.2d at 400.

Our law further makes clear that compliance with Pa.R.A.P. 1925(b) is not simply a matter of filing any statement. Rather, the statement must be concise and sufficiently specific and coherent as to allow the trial court to understand the allegation of error and offer a rebuttal. These requirements are evident in the following language from Dowling:

When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

. . . While Lord and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that Lord should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal. In the instant case, [a]ppellant's Concise Statement was not specific enough for the trial court to identify and address the issue [a]ppellant wished to raise on appeal. As such, the court did not address it. Because [a]ppellant's vague Concise Statement has hampered appellate review, it is waived.

Dowling, 778 A.2d at 686-687 (citations and quotation marks omitted).

Moreover, as we stated in Reeves:

- 5 -

> There is a common sense obligation to give the trial court notice as to what the trial court should address in its Rule 1925(a) opinion. While there is a middle ground that [an appellant] must travel to avoid having a Rule 1925(b) statement so vague that the trial judge cannot ascertain what issues should be discussed in the Rule 1925(a) opinion or so verbose and lengthy that it frustrates the ability of the trial judge to hone in on the issues actually being presented to the appellate court, see Kanter v. Epstein, 866 A.2d 394 (Pa. Super. 2004), that is not an onerous burden to place on [an appellant]. It only requires using a little common sense.

Reeves, 907 A.2d at 2-3.

In addition, we note that, "[a]lthough this Court is willing to liberally construe materials filed by a pro se litigant, pro se status confers no special benefit upon the appellant." Commonwealth v. Adams, 882 A.2d 496, 498 (Pa. Super. 2005) (citing Commonwealth v. Lyons, 833 A.2d 245, 252 (Pa. Super. 2003)). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." Adams, 882 A.2d at 498 (citing Commonwealth v. Rivera, 685 A.2d 1011 (Pa. Super. 1996)).

In essence, the purpose of requiring a concise statement of matters complained of on appeal under Pa.R.A.P. 1925(b) is to allow the trial court to easily discern the issues an appellant intends to pursue on appeal and to allow the court to file an intelligent response to those issues in an opinion pursuant to Pa.R.A.P. 1925(a). Father's Pa.R.A.P. 1925(b) statement fails in this regard.

The trial court offered the following comments regarding Father's Pa.R.A.P. 1925(b) statement, which compels our conclusion:

Father filed his Notice of Appeal on May 22, 2018 and filed what he styled as his Statement of Matters Complained of on Appeal. His Statement, rather than being concise or directing the [c]ourt to what Father asserts are errors or abuses of discretion, is a recitation of Father's testimony, his interpretation of the evidence presented at the hearing, and his conclusions as to what that testimony and evidence "proved." Accordingly, for the purpose of drafting this Opinion, I assume that Father believes my decision was against the weight of the evidence and an abuse of my discretion.

Trial Court Opinion, 7/2/18, at 4 (footnote omitted).

Our review of the certified record reflects that Appellant's Pa.R.A.P. 1925(b) statement contains four points that, as the trial court aptly stated, amount to a recitation of Father's testimony, his interpretation of the evidence presented, and his conclusions as to what that testimony and evidence proved. Specifically, Father offered the following in his Pa.R.A.P. 1925(b) statement:

A. April 25th, 2018 a final order in the family court from a trial for custody modification request of an existing custody relocation order from September of 2017 was entered not granting a modification.

B. On April 25th in the trial referenced, it was proven that [Mother] beats the children for punishment and the child youth services of South Carolina were contacted by the father. The children also advised [the trial court] that they are afraid of [Mother] due to her beating them and that they are uncomfortable with [Mother's] fiancé [R.], entering their bedroom without knocking and yelling at them to discipline them. It was also proven that before last year, [Mother] nor the children lived with [R.]. The children advised [the trial court] that they want more phone time and [C.B.S.] also said she wants to see her father more often. The court was made aware that [C.B.S.] pulled chunks of her hair out of her head due to being upset with treatment from her mother. The court was also made aware that [C.B.S.] said she thought about hurting herself due to the treatment from her mother. It was proven that [Mother] stopped critical counseling for [C.M.S.], that is needed for her anxiety. [Mother] testified she is not a

doctor. All the issues listed in this paragraph contradict the standing order: factors 9 & 10 listed maintaining a stable, loving and nurturing relationship with the children. The children are receiving much more punishment then they ever have, since being relocated to South Carolina. The facts and transcripts show the move to South Carolina is not beneficial to the children.

C. In the trial it was also proven that [Mother] used to let the children call and text their father anytime and stay on the phone as long as they wanted before the day in November when the South Carolina child youth services started to investigate her for suspected abuse. Out of retaliation [Mother] began limiting phone time to only 30 minutes per day and only between 7-8 pm between the children and their father, even on weekends. The children are not allowed to accept calls from their father outside of the 30-minute timeframe and do not have time to speak to other family members due to the time constraints. [Mother] also started taking their phones, bought by the father, so they could not continue liberal phone contact as the order states. The confiscation of the phones and time limits also defy the order for the availability to text anytime and skype or video chat with their father. This shows interference and clearly that the mother is not maximizing their contact time nor foster a relationship with the children and other parent. The current order also states the mother is to encourage contact: I testified that [Mother] makes the children abruptly hang up exactly at 30 minutes. It was also proven the defendant tried to cut short visits for the children to their father. The current order also states the special needs of the children are to be met, it was proven otherwise that the children are not having their needs considered, such as [C.M.S.'s] anxiety is being ignored and [Mother's] fiancé yelling at them often upsets both.

D. The court was made aware that the children used to see their grandmother everyday and in the order, she was to visit the children often but has not visited them once since they moved. Factor 5 listed in the current standing order.

Pa.R.A.P. 1925(b) Statement, 5/22/18, at 1-2.

The ultimate result of Father's presentation is that any issues Father wished to raise in this appeal are lost in the midst of the rambling narration

laid out in his Pa.R.A.P. 1925(b) statement. In short, Father's statement is neither concise nor sufficiently specific and coherent to allow the trial court to understand the specific allegations of error and offer a rebuttal. Rather, due to the presentation of Father's Pa.R.A.P. 1925(b) statement, the trial court was compelled to guess at the issues that Father sought to preserve and raise on appeal. However, even if the trial court correctly guessed the issues Father wanted to raise, and wrote its opinion pursuant to that supposition, the issues are waived. Kanter, 866 A.2d at 400. Given the foregoing, we conclude that Father's challenges to the trial court's order denying modification are waived. Therefore, we affirm the order.

Even if we were to ignore Father's waiver of the issues due to his inadequate Pa.R.A.P. 1925(b) statement and address the claims in his brief, we would, nevertheless, affirm the trial court's order.[1] Basically, Father's

_____

[1] We note that, within the argument portion of his brief, Father has intermingled claims attempting to challenge the propriety of the trial court's order permitting Mother to relocate. However, review of such claims is precluded. It is undisputed that a notice of appeal must be filed within thirty days of a disputed order. Pa.R.A.P. 903(a). We are mindful that, regarding late attempts to challenge a support order, we have held that a party may not use a modification petition as a substitute for an appeal by attempting to relitigate matters adjudicated by the underlying support order. Florian v. Florian, 689 A.2d 968, 971-972 (Pa. Super. 1997). See Boullianne v. Russo, 819 A.2d 577, 580 (Pa. Super. 2003) (explaining that a petition to modify an order of support cannot be a substitute for an appeal); Beegle v. Beegle, 652 A.2d 376, 378 (Pa. Super. 1994) (stating "[a]llegations of error in the factual findings of a lower court are properly addressed by filing exceptions and an appeal to this Court, not by filing a petition to modify in the same court that rendered the order."). Likewise, a party may not use an

three arguments in his appellate brief rest on the concept that, in light of the evidence that Father contends is in his favor, the trial court abused its discretion in denying modification.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

_____

appeal from the disposition of a petition for modification of custody as a substitute for an appeal from an underlying order for the purpose of relitigating matters pertaining to the underlying order. Therefore, in order to challenge a relocation order, the party must take a timely appeal from the order.

Our review of the certified record reflects that the trial court entered its custody order permitting Mother to relocate on September 27, 2017. It is undisputed that Father did not file an appeal from that order. Because Father did not pursue a timely appeal of the trial court's relocation order dated September 27, 2017, he may not do so now. Therefore, this Court is without jurisdiction to hear any issue related to appropriateness of that order. Hence, we are constrained to decline review of any issue as it pertains to the propriety of the order dated September 27, 2017.

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In M.A.T. v. G.S.T., 989 A.2d 11 (Pa. Super. 2010) (en banc), we stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

Id. at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338. Section 5323 of the Act provides for the following types of custody awards:

> (a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
>> (1) Shared physical custody.
>>
>> (2) Primary physical custody.
>>
>> (3) Partial physical custody.
>>
>> (4) Sole physical custody.

     (5) Supervised physical custody.

     (6) Shared legal custody.

     (7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the sixteen best-interest factors that the trial court must consider. E.D. v. M.P., 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "[a]ll of the factors listed in section 5328(a) … when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Further, we have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa. Super. 2013), appeal denied, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V. v. S.T., 87 A.3d 818, 822-823 (Pa. Super. 2014).

We have reviewed the briefs of the parties, the relevant legal authority, the certified record, and the trial court's opinion. In addressing Father's challenges to the weight of the evidence supporting the trial court's denial of modification of custody, the trial court offered the following discussion:

> As noted above, I presided over the trial on Mother's Petition to Relocate less than a year before the instant matter came before me. I heard from both parties and interviewed the two girls at that time as well as in the instant hearing.
>
> At the instant hearing, Father testified that Mother interferes with his communications with the children to retaliate for him filing a child abuse complaint against her. He further testified that the girls are beaten by Mother and neglected in general, including the cessation of emotional counseling which the younger child had been receiving. (TR. p. 8).
>
> I interviewed the girls without their Mother present to determine if Father's allegations of abuse were well founded. The girls spoke to me by phone with the younger child doing most of the talking. The children testified that Mother and her fiancé "yell" and that they find this scary (TR. p 23), but that nobody in the home is "being mean" to them (TR. p. 33). The younger child testified that her Mother had "slapped" her on one occasion. The children essentially testified that everything is going well but that they miss Father and wish they could be with him more. Both acknowledged that, if they lived with Father, they would likewise miss Mother.
>
> Mother testified that she does not interfere with Father's calls out of retaliation but that she sets what she feels to be reasonable limits on the children's calls and texts. (TR. p. 50). She testified that she makes certain that the children have a daily call with Father. (TR. p. 66-67). She further testified that when the children misbehave, she takes away their access to all electronics, including phone, television, and computers, as punishment. (TR. p. 50). Father introduced screen shots of calls and texts to demonstrate Mother's interference but those screen shots revealed phone calls of over 40 minutes and texts which were occurring late into the evening on school nights. I did not find that Mother's decision to limit such contact was unreasonable

or in contravention of my Order which required that contact be exercised with common sense.

Mother testified that she employs corporal punishment when the children refuse to comply with her directives. Mother is, as I noted at the previous hearing, more of a disciplinarian than Father. I found from Mother's testimony and that of the children that Mother may be overly strict with the children at times, but not that she is abusive or that the children are being abused or neglected. I may not agree that Mother's use of corporal punishment is her best course of action but I did not find that there was any evidence of behavior which would constitute abuse.

Based on the totality of the evidence presented, I did not find that Father had met his burden of presenting evidence which would have justified modifying the present custodial arrangement or holding Mother in contempt. Under cross examination; Father testified that he has exercised custody of the children for every holiday and long weekend contemplated by the September 27, 2017 Order and that he speaks with the children every day.

The girls are respectful and good students and appear to be doing well, although they both naturally feel unhappiness as a result of separation from their Father. That unhappiness, however, does not appear to be as dire as Father asserts, but is, rather, the type of unhappiness that children in separated families often face.

In particular, the younger girl, who has always suffered from anxiety, testified that her anxiety caused stomach issues have gotten better since the move. Mother testified that the child is using appropriate coping mechanisms which she learned from therapy and doing quite well with her anxiety. (TR. p. 60). Mother also testified that, contrary to Father's assertions, she ended therapy for the younger girl at the recommendation of Child's therapist, not out of neglect. (TR p. 50). After speaking with the girls, I felt they could both benefit by being given some additional coping skills from a professional for their issues surrounding the separation from Father and, accordingly, ordered Mother to engage a therapist for them.

I did not find that Mother is unreasonably interfering with Father's communication with the children; I found that she may be too rigid with regard to the time constraints placed on phone

calls. I, therefore, directed that those calls can be longer than 30 minutes, while again stressing common sense be used.

In any relocation case, there will be a period of adjustment as well as emotional pain caused by the physical distance between one parent and the children. This case is no different. I sympathize with Father's concerns for the well being of his children from whom he is separated. The evidence, however, did not demonstrate that the children are being neglected or abused as Father has asserted or that Mother is thwarting his relationship with the girls.

Trial Court Opinion, 7/2/18, at 4-7.

After a careful review of the record, we reject Father's invitation to substitute our judgment for that of the trial court. We remind Father that we may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. C.R.F., 45 A.3d at 443. Therefore, had we not found Father's issues to be waived, we would determine that the trial court's conclusions do not involve an error of law and are not unreasonable as shown by the evidence of record. The trial court adequately explained its findings, and they are supported by the competent evidence in the record.[2] Hence, we would sustain the trial court's determination pursuant to C.R.F.

_____

[2] To the extent Father alleges that the trial court erred in failing to address the sixteen factors set forth in 23 Pa.C.S. § 5328(a), we observe that such analysis was not required by the trial court in this particular instance. Father is correct that a trial court must analyze the Section 5328(a) custody factors when making an award of custody. However, this Court has explained that a discussion of each factor is not necessary where the trial court does "not change the underlying award of custody" but, rather, "modifie[s] a discrete

_____

custody-related issue[.]" M.O. v. J.T.R., 85 A.3d 1058, 1063 (Pa. Super. 2014).

In M.O., the parties resolved a discrete issue pertaining to vacation custody time and transportation, and whether the father was required to be off from work while the children stayed with him, with limited testimony taken in chambers. The trial court then issued an order without examination of the sixteen statutory factors. Id. at 1060. Mother appealed, arguing that the court erred in refusing to expressly consider each of the sixteen factors in making its decision, and in failing to provide rationale for its decision. Id. at 1061. On appeal, this Court rejected the mother's argument, noting that the court had made no award of custody, or even changed the amount of custodial time either party had with the children, but addressed a subsidiary issue; accordingly, we found that the trial court was not bound to address the sixteen statutory factors or its reasons for the award. Id. at 1062-1063. Specifically, the Court in M.O. stated:

> The plain language of Section 5328(a) requires that the sixteen enumerated factors be considered when the court is determining a child's best interest for the purpose of making an award of custody. 23 Pa.C.S.A. §§ 5323(a), 5328(a). By contrast, while the court must consider the child's best interest when modifying a custody order, the modification provision does not refer to the sixteen factors of Section 5328. 23 Pa.C.S.A. § 5338(a). The cases in which we have applied Section 5328(a) have involved the award of custody as defined by Section 5323(a) or have involved a modification that also entailed a change to an award of custody.

Id. at 1062 (footnote omitted). Subsequently, in A.V., this Court narrowed the holding of M.O., finding that M.O. was applicable only to cases in which custody was not directly modified. Id. at 824 n.4.

The instant order entered on April 26, 2018, did not modify the existing custody order. Instead, the order directed Mother to enroll Children with a counselor and instructed that phone calls may be longer than thirty minutes in length. Order, 4/26/18. Hence, this situation is similar to M.O., in that the trial court did not modify custody, but clarified discrete subsidiary issues that arose under the prior custody order. M.O., 85 A.3d at 1062-1063; cf. A.V., 87 A.3d at 824 n.4. Therefore, the trial court was neither required to discuss the sixteen custody factors, nor to delineate its reasoning on the record.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2019

_____

Consequently, even if we had not determined Father has waived all issues, we would have concluded that there was no merit to this claim of error.