J-A27032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF RONALD R. FLUELLEN | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| APPEAL OF: LA CRETIA FLUELLEN | : | No. 3557 EDA 2018 |

Appeal from the Order Entered November 9, 2018
in the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): OC-00540-AP OF 2018

BEFORE:   BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 17, 2019**

LaCretia Fluellen (Appellant) appeals *pro se* from the order entered November 9, 2018, which dismissed her appeal from the decision of the Register of Wills to probate a will executed by Ronald R. Fluellen (the Decedent).  We affirm.

Appellant is the Decedent's daughter.[1]  On September 6, 2017, the Decedent executed a will leaving his entire estate to Appellant and naming Appellant as executor of his estate.[2]  On September 18, 2017, the Decedent met with Attorney Langsam.  According to Attorney Langsam, the Decedent instructed Attorney Langsam to send a letter to Appellant informing her that because the Decedent suspected Appellant of having withdrawn $8,000 from his bank account, he was going to close the bank account and she should

---

[1] The Decedent has three children: Appellant, Ronald Fluellen, Jr., and Vincent Fluellen.

[2] The scrivener of this will was Attorney Saul Langsam.

* Retired Senior Judge assigned to the Superior Court.

return her debit card. In addition, the Decedent informed Attorney Langsam that he wished to change his will and appoint his brother, Robert Fluellen (Robert), as executor and leave his estate to Appellant's daughter, Shawna Overby-Blackston.

Attorney Langsam prepared a new will (the Revised Will) consistent with the Decedent's revised wishes, but prior to its execution, the Decedent was hospitalized. On October 9, 2017, the Decedent authorized Attorney Langsam to release the Revised Will to Overby-Blackston, so she could deliver it to the Decedent for execution. The Decedent executed the Revised Will on October 9, 2017, while hospitalized. The Decedent died on October 29, 2017.

On February 21, 2018, the Register of Wills admitted the Revised Will to probate and letters testamentary were granted to Robert. On April 24, 2018, Appellant appealed the decree of the Register of Wills, asserting that the Revised Will was invalid for numerous reasons. The orphans' court held a hearing on October 31, 2018. At that hearing, counsel for the estate introduced the Revised Will into evidence.[3] Then, the burden shifted to Appellant to produce evidence that Appellant lacked testamentary capacity[4]

---

[3] The trial court concluded that "[p]roper execution of the" Revised Will was established. Orphans' Court Opinion, 1/25/2019, at 1. **See also** N.T., 10/31/2018, at 6 (pointing out that the Revised Will was "accepted and probated, and it was both witnessed and notarized").

[4] "The burden of proof as to testamentary capacity initially rests with the proponent of a will. However, a presumption of testamentary capacity arises

- 2 -

or that the Decedent was subject to undue influence.[5]  Appellant called four witnesses to testify: 1) Martia Fluellen, Appellant's daughter; 2) Overby-Blackston; 3) Ronald Fluellen, Jr.; and 4) Attorney Langsam.

On November 9, 2018, the orphans' court dismissed Appellant's appeal from the Register of Wills.  The orphans' court concluded that Robert "met his burden of proving the proper execution of [the Revised Will] while [Appellant] failed to present clear and convincing evidence that the [D]ecedent lacked testamentary capacity or that the [Revised Will] had been procured by undue influence." Final Decree, 11/9/2018.  Appellant timely filed a notice of appeal to this Court.

On December 5, 2018, the orphans' court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied, and the orphans' court filed an opinion in response on January 25, 2019.

On appeal, Appellant has set forth seven issues for our review. **See** Appellant's Brief at 4.  However, before we consider these issues, we must determine which, if any, issues have been preserved for our review.  Our rules

_____

upon proof of execution by two subscribing witnesses. Thereafter, the burden of proof as to incapacity shifts to the contestant to overcome that presumption." **In re Hastings' Estate**, 387 A.2d 865, 867 (Pa. 1978) (internal citations omitted).

[5] "Once a will has been probated, the contestant who claims that the will was procured by undue influence has the burden of proof." **In re Estate of Fritts**, 906 A.2d 601, 606 (Pa. Super. 2006).

- 3 -

J-A27032-19

provide that a concise statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised." Pa.R.A.P. 1925(b)(4)(ii). "The [s]tatement should not be redundant or provide lengthy explanations as to any error." *Id*. at 1925(b)(4)(iv).

As set forth by the orphans' court,

> Appellant's 1925(b) statement is the antithesis of concise. It totals thirty-two pages featuring fourteen numbered paragraphs and many more subparagraphs. Sometimes the 1925(b) statement is in narrative form, sometimes not. It is a discursive, argumentative, and incoherent rant peppered with non-sequiturs, asides, and innuendo. In short, Appellant's 1925(b) statement circumvents the letter and spirit of Rule 1925.

Orphans' Court Opinion, 1/25/2019, at 8-9.

Our review of Appellant's concise statement confirms the summary set forth by the orphans' court. "Our law … makes clear that compliance with Pa.R.A.P. 1925(b) is not simply a matter of filing any statement. Rather, the statement must be concise and sufficiently specific and coherent as to allow the trial court to understand the allegation of error and offer a rebuttal." *S.S. v. T.J.*, 212 A.3d 1026, 1031 (Pa. Super. 2019).

> In addition, we note that, [a]lthough this Court is willing to [construe liberally] materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself [or herself] in a legal proceeding must, to a reasonable extent, assume that his [or her] lack of expertise and legal training will be his [or her] undoing.
>
> In essence, the purpose of requiring a concise statement of [errors] complained of on appeal under Pa.R.A.P. 1925(b) is to allow the trial court to easily discern the issues an appellant intends to pursue on appeal and to allow the court to file an

- 4 -

intelligent response to those issues in an opinion pursuant to Pa.R.A.P. 1925(a).

*Id*. at 1032 (internal citations and quotation marks omitted).

Here, the orphans' court concluded that due to the nature of Appellant's concise statement, the orphans' court would address only "the issues of lack of testamentary capacity and undue influence – the substantive issues at play in the underlying will contest." Orphans' Court Opinion, 1/25/2019, at 9. We agree with this assessment by the orphans' court and will address only those two issues on appeal.

In doing so, we bear in mind that "[i]n a will contest, the hearing judge determines the credibility of witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the [orphans'] court's findings of fact were based upon legally competent and sufficient evidence and whether there was an error of law or abuse of discretion." *Estate of Reichel*, 400 A.2d 1268, 1269-70 (Pa. 1979). "Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside." *In re Bosley*, 26 A.3d 1104, 1107 (Pa. Super. 2011).

We begin with Appellant's claim that the orphans' court erred in concluding that Appellant failed to sustain her burden of proof with respect to the Decedent's testamentary capacity at the time he executed the Revised Will. *See* Appellant's Brief at 18.

The law concerning testamentary capacity is well-settled. A testator possesses testamentary capacity if he knows those who are the natural objects of his bounty, of what his estate consists, and what he desires done with it, even though his memory may have been impaired by age or disease.

\*\*\*

The condition of the testator at the very time of execution is crucial; however, evidence of capacity or incapacity for a reasonable time before and after execution is admissible as indicative of capacity. Finally, old age, sickness, distress or debility of body neither proves nor raises a presumption of incapacity.

*In re Kuzma's Estate*, 408 A.2d 1369, 1371 (Pa. 1979) (internal citations omitted).

Here, the orphans' court concluded that "Appellant failed to offer clear and convincing evidence [the] Decedent lacked testamentary capacity at the time he executed the [Revised Will]." Orphans' Court Opinion, 1/25/2019, at 10.

[The] Decedent may have been afflicted with cancer which, in part, had spread to his brain, but none of the testimony at the hearing suggested the cancer had impaired [the] Decedent's mind at the time he executed the will. Of the four witnesses called by Appellant [at the hearing], three were not physically present when [the] Decedent executed the [Revised Will]. [Attorney] Langsam, however, did speak on the phone with [the] Decedent the day he executed the [Revised Will] and described his conversation with [the] Decedent as follows:

> [The Decedent] was always focused. He [] never gave me a sense that he was confused. He was rather emphatic, and when I saw him or even when I spoke with him, I was always left impressed with the fact that here is somebody that has been diagnosed with brain cancer and they're very, very focused.

[N.T., 10/31/2018, at 78.] Further, the testimony of Ms. Overby-Blackston, the only testifying witness who was in the room when [the] Decedent executed the [Revised Will], directly undermined Appellant's claim [that the] Decedent lacked testamentary capacity. She never believed [the] Decedent to be impaired in anyway. [*Id*. at 22-23.] While Ms. Overby-Blackston's testimony must be viewed in light of her direct interest in [the] Decedent's estate, the [orphans' court] found her credible nonetheless.

In any event, Appellant's evidence fell far short of the exacting clear and convincing standard required to prove lack of testamentary capacity. None of the four witnesses called by Appellant testified to [the] Decedent's lack of capacity and in fact stated he never lost his mental capacity. Therefore, Appellant did not meet her burden and failed to prove [the] Decedent lacked testamentary capacity when he executed the [Revised Will].

Orphans' Court Opinion, 1/25/2019, at 10-11.

Our review of the orphans' court's assessment reveals no error of law or abuse of discretion. Appellant presented no evidence at the hearing, and does not present any relevant argument on appeal, that the Decedent lacked testamentary capacity at the time he executed the Revised Will. Accordingly, Appellant is not entitled to relief on this basis.

We now consider whether the orphans' court erred in concluding that Appellant failed to sustain her burden of proof with respect to her claim that the Revised Will was procured by undue influence. *See* Appellant's Brief at 18.

A *prima facie* case of undue influence is established and the burden of proof is shifted to the will's proponent when three elements are established: 1) there was a confidential relationship between the proponent and testator; 2) the proponent receives a substantial benefit under the will; 3) the testator had a weakened intellect.

[U]ndue influence is a subtle, intangible and illusive thing, generally accomplished by a gradual, progressive inculcation of a

receptive mind. Consequently, its manifestation may not appear until long after the weakened intellect has been played upon.

*Fritts*, 906 A.2d at 606-07 (internal citations and quotation marks omitted).

Here, the orphans' court determined that Appellant failed to establish any of the three aforementioned elements. We first address the existence of a confidential relationship, as it is dispositive of Appellant's issue.

> A confidential relationship for purposes of undue influence exists whenever circumstances make it certain that the parties did not deal on equal terms but that on one side there was an over-mastering influence, and on the other, dependence or trust, justifiably reposed. The term "influence" does not encompass every line of conduct capable of convincing a self-directing person to dispose of property in one's favor. The law requires that the influence be control acquired over another that virtually destroys [that person's] free agency. Conduct constituting influence must consist of imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will. A parent-child relationship does not establish the existence of a confidential relationship nor does the fact that the proponent has a power of attorney where the decedent wanted the proponent to act as attorney-in-fact.

*In re Estate of Angle*, 777 A.2d 114, 123 (Pa. Super. 2001) (internal citations and quotation marks omitted).

Instantly, Appellant produced no evidence that a confidential relationship existed between either Robert and the Decedent or Overby-Blackston and the Decedent. Robert did not testify at the hearing. Overby-Blackston's testimony established that she and her grandfather were close because he "took care of [her] growing up." N.T., 10/31/2018, at 22. Overby-

Blackston is married, works full time, and lives in Maryland, but would visit the Decedent anytime she went to the Philadelphia area. We agree with the orphans' court that no testimony suggested that the

> Decedent was overly weak, dependent, or trusting of his granddaughter. Other than a few scant details about errands, thwarted plans to move to Maryland, and Ms. Overby-Blackston acting as a courier the day the [Revised Will] was executed, [there was] no evidence, let alone clear and convincing evidence, of a confidential relationship between [the] Decedent and Ms. Overby-Blackston.

Orphans' Court Opinion, 1/25/2019, at 13.

Because Appellant failed to establish the existence of a confidential relationship between the Decedent and either Robert or Overby-Blackston, her claim that the Revised Will was procured by undue influence must fail. Accordingly, the orphans' court did not err in concluding that Appellant failed to meet her burden in proving either that the Decedent lacked testamentary capacity or that the Revised Will was procured by undue influence. Therefore, Appellant is not entitled to relief, and we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/17/19

- 9 -