J-S18017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.F.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.L.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 36 WDA 2025 |

Appeal from the Order Entered November 26, 2024
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  062-2024

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED: August 27, 2025**

R.L.H. (Mother) appeals from the order terminating her parental rights to M.F.H. (Child).[1]  On appeal, Mother argues that T.J.H. (Father) and O.A.H. (Stepmother) (collectively, "Petitioners") failed to establish grounds to terminate Mother's parental rights by clear and convincing evidence.  Mother also claims that the orphans' court erred by excluding evidence of Father's past conduct.  We affirm.

The orphans' court summarized the relevant facts and procedural history of this matter as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] Child was born in June of 2022, and was two years and five months old at the time of the November 7, 2024 termination of parental rights hearing.  ***See*** N.T., 11/7/24, at 6.

Mother and Father had separated approximately two months before the birth of [] Child. Mother had suffered a traumatic event when another child of hers was tragically killed.[2] Almost immediately following [] Child's birth, Father filed a complaint for custody in September 2022. The current custody order between the parties has been in place since [December 13, 2022[3]], with Father maintaining primary physical custody [and sole legal custody]. At that time, and since that point, Mother [was] allotted supervised partial physical custody with supervision to be provided by a licensed agency.

Orphans' Ct. Op., 2/14/25, at 2.

On July 3, 2024, Petitioners filed a petition to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), and (b) of the Adoption Act.[4]

The orphans' court conducted a hearing on the petition to involuntarily terminate Mother's parental rights November 7, 2024. Mother appeared at the hearing with counsel. Child was represented by Patricia Elliott-Rentler, Esq., who served both as Child's guardian *ad litem* (GAL) and as Child's legal counsel.[5]

_____

[2] Father is not the father of Mother's deceased child. **See** N.T., 11/7/24, at 11, 64.

[3] **See** Hr'g Ex. 1 at 1 (Custody Order, 1541-2022-D, 12/13/22).

[4] 23 Pa.C.S. §§ 2101-2938.

[5] We note that children have a statutory right to counsel in contested involuntary termination of parental rights proceedings. **See In re K.R.**, 200 A.3d 969, 984 (Pa. Super. 2018) (*en banc*); 23 Pa.C.S. § 2313(a). It is well settled that "a single attorney cannot represent a child's best interests and legal interests if those interests conflict." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020) (citation omitted). However, "during contested
*(Footnote Continued Next Page)*

- 2 -

The orphans' court summarized the evidence presented at the termination of parental rights hearing (TPR hearing) as follows:

Mother has not taken advantage of [the custody order's provision] for supervised partial physical custody; it is reported by Father that Mother has not seen [] Child since December 2022 when [] Child was only six months old.[6] Mother's testimony indicated that she was able to obtain some financial support that she was planning to allocate to pay for periods of supervised custody, but the majority of those funds were put toward supervised custody scheduling with [] Child's sibling. According to Father's testimony, Mother has sporadically contacted him to ask if she can provide

_____

termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests." **In re T.S.**, 192 A.3d 1080, 1092 (Pa. 2018). Therefore, before appointing the GAL to also serve as a child's legal counsel, a trial court must "make [a] determination" that "counsel does not have a conflict representing the child's best and legal interests[.]" **K.M.G.**, 240 A.3d at 1236-37.

As stated above, the orphans' court appointed Attorney Elliott-Rentler as Child's GAL. **See** Order Appointing Legal Counsel, 8/26/24. At the TPR hearing, Attorney Elliott-Rentler noted on the record that there was no conflict between Child's best and legal interests, and the orphans' court responded "Okay." N.T., 11/7/24, at 3-4. Therefore, we are constrained to conclude that the orphans' court's one word reply to GAL, was not an on-the-record determination that Attorney Elliott-Rentler could represent Child's best interests and legal interests without conflict. **See**, **e.g.**, **K.M.G.**, 240 A.3d at 1236-37; **In re A.C.M.**, 333 A.3d 704, 708 (Pa. Super. 2025) (vacating the decree terminating parental rights where the orphans' court delegated the responsibility to determine if a conflict existed to counsel). However, our Supreme Court has recognized that there is a presumption that there is no conflict between a child's best interests and legal interest when a child is too young to articulate a preference in the outcome of the proceedings. **T.S.**, 192 A.3d at 1088-90. Because Child was only two years and five months old at the time of the termination hearing, we conclude that the presumption of no-conflict from **T.S.** applies. **See id.**

[6] Mother acknowledged that she last had contact with Child during a period of supervised physical custody on December 27, 2022 when Child was six months old. **See** N.T., 11/7/24, at 6-7, 9-10, 13.

formula or other items — even after [] Child was developmentally beyond such needs.

Father testified that Stepmother has shared in performing the parental duties for [] Child with him in Mother's absence. Father and Stepmother believe they are in the best position to care for [] Child's special needs, as she has a cyst on her pituitary gland. [] Child identifies Stepmother as her mother; it is unclear if [] Child would recognize Mother, since her last in-person contact with [] Child would have been over two years ago.

Orphans' Ct. Op., 2/14/25, at 2-3.

We add that Father testified that he has denied Mother's requests to see Child outside of a supervised visitation setting because that is not permitted under the custody order. *See* N.T., 11/7/24, at 20, 36. Father testified that when Child was born, he and Mother shared childcare responsibilities equally. *See id.* at 29. Father denied ever physically abusing Mother. *See id.* at 28-29.

Stepmother testified that she has assisted Father with caring for Child since she began dating Father, which was when Child was about four months old.[7] *See id.* at 43. Stepmother further explained that she and Father share parental responsibilities equally. *See id.* at 43-44, 48. Stepmother testified that she has a strong bond with Child, who calls Stepmother "mommy" and "momma." *See id.* at 43, 46. Further, Child follows Stepmother around and mimics Stepmother. *See id.* at 46. Stepmother stated that she does not treat Child any differently than her biological child. *See id.*

---

[7] Father and Stepmother were married shortly before the TPR hearing. *See* N.T., 11/7/24, at 47.

- 4 -

Petitioners explained that Child has had multiple doctor's visits to monitor the growth of the cyst on her pituitary gland including visits to an endocrinologist and a neurologist every three to six months. *See id.* at 22-23, 28, 31, 44-45, 49.

Mother testified that when Child was born, she performed nearly all parental duties and that Father performed almost no parental duties because he was constantly away from home. *See id.* at 55, 58-60, 74-75. Mother stated that when Child was born, doctors told her that Child has a cyst on her pituitary gland but "it was nothing to worry about. That it would not cause any problems or like anything[.]" *Id.* at 66. Mother explained that she last had supervised visitation with Child on December 27, 2022. *See id.* at 6-7, 9-10, 13, 69.

Mother explained that she asked Father to see Child "countless times" outside of a supervised visitation setting but Father denied her requests. *Id.* at 70. Mother also testified that she cannot afford to pay for supervised visitation sessions with Child and she has been unable to obtain financial assistance for the visitation except for a grant of $2,000 that went to the agency supervising her visitation with her other child. *See id.* at 10, 57-58, 68, 72, 77-79. Mother's counsel asked Mother if Father had ever been physically abusive towards her. *See id.* at 62-63. Petitioners' counsel objected to the relevance of the question, and Mother's counsel responded that it was relevant to Child living with Father. *See id.* The orphans' court sustained the objection. *See id.* Lastly, Mother claimed that that the court

system had failed her and Child because the courts favor "bad people" and "psychos" over "perfectly sane and normal people and parents." *Id.* at 81.

On November 26, 2024, the orphans' court filed an order granting the petition to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), and (b). Mother filed a timely notice of appeal, and both the orphans' court and Mother complied with Pa.R.A.P. 1925.

On appeal, Mother presents the four issues, which we reorder as follows:

1. Whether the [orphans'] court erred by not allowing Mother to introduce evidence of past and present conduct of Father as it impacts the best interests of [] Child.

2. Whether the [orphans'] court erred in finding by clear and convincing evidence that [Petitioners] met [their] burden as to terminating the parental rights of Mother under 23 Pa.C.S. § 2511(a)(1).

3. Whether the [orphans'] court erred in finding by clear and convincing evidence that [Petitioners] met [their] burden as to terminating the parental rights of Mother under 23 Pa.C.S. § 2511(a)(2).

4. Whether the [orphans'] court erred in finding by clear and convincing evidence that [Petitioners] met [their] burden under 23 Pa.C.S. § 2511(b) that the best interests of [] Child are met by terminating Mother's parental rights.

Mother's Brief at 4-5 (some formatting altered).[8]

---

[8] We note that in her Rule 1925(b) statement, Mother also claimed that the orphans' court erred by denying her motion to sequester Stepmother. **See** Rule 1925(b) Statement, 12/24/24, at ¶5. Mother has not raised this issue in her appellate brief; therefore, Mother has abandoned it on appeal. **See** Pa.R.A.P. 2116(a), 2119(a); **see also Allied Envtl. Serv., Inc. v. Roth**, 222 A.3d 422, 424 n.1 (Pa. Super. 2019) (stating that "[a]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted)).

**Exclusion of Evidence**

In her first issue, Mother argues that the orphans' court abused its discretion by excluding evidence of Father's past conduct. Mother's Brief at 23-25. Specifically, Mother contends that the orphans' court should have admitted evidence of Father's past physical and emotional abuse of Mother. *Id.* at 24. Mother claims that this evidence is relevant to Child's health, safety, welfare, and best interests in Father's home. *Id.* at 24-25.

Before we address the merits of this issue, we must first determine if Mother has preserved it for appeal. This Court may raise this issue of waiver *sua sponte*. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

Issues that are not raised in an appellant's concise statement are waived on appeal. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in a Rule 1925 concise statement are waived); **see also Dietrich v. Dietrich**, 923 A.2d 461, 463 (Pa. Super. 2007).

Further, this Court has stated that

> a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no concise statement at all.

\*     \*     \*

- 7 -

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> \* \* \*
>
> In essence, the purpose of requiring a concise statement of matters complained of on appeal under Pa.R.A.P. 1925(b) is to allow the trial court to easily discern the issues an appellant intends to pursue on appeal and to allow the court to file an intelligent response to those issues in an opinion pursuant to Pa.R.A.P. 1925(a).

*S.S. v. T.J.*, 212 A.3d 1026, 1031-32 (Pa. Super. 2019) (citations omitted and formatting altered).

Here, in her Rule 1925(b) statement, Mother claimed that the orphans' court "erred by not allowing Mother to introduce evidence of past and present conduct of Father as it impacts the best interests of [] Child." Rule 1925(b) Statement, 12/24/24, at ¶4.

In its Rule 1925(a) opinion, the orphans' court discussed its decision to allow Mother, over Petitioners' objection, to present evidence regarding Father's role in childcare prior to the parents' separation. *See* Orphans' Ct. Op., 2/14/25, at 5. The orphans' court did not discuss its decision to exclude Mother's testimony about Father's alleged past physical abuse of Mother at all in its Rule 1925(a) opinion. Therefore, we conclude that Mother's Rule 1925(b) statement was too vague to identify her claim that the orphans' court erred by excluding evidence regarding Father's alleged past physical abuse. *See S.S.*, 212 A.3d at 1031-32. Accordingly, this issue is waived.

**Termination of Parental Rights**

In her remaining issues, Mother argues that the orphans' court erred by terminating her parental rights. Mother's Brief at 13-23.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023) (citations omitted); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that "the trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence" (citation omitted and some formatting altered)).

> Termination of parental rights is governed by § 2511 of the Adoption Act. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination. In evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a balancing or best interest approach. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then must assess the petition under § 2511(b), which focuses on the child's needs and welfare.

*In re M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citations omitted and some

formatting altered); *see also Q.R.D.*, 214 A.3d at 239 (explaining that if "the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child" (citation omitted and formatting altered)).

In its Rule 1925(a) opinion, the orphans' court thoroughly explained its reasons for terminating Mother's parental rights and its conclusion that termination was in Children's best interests. *See* Orphans' Ct. Op. at 2-6.

Following our review of the record, the parties' briefs, the relevant law, and the orphans' court's well-reasoned analysis, we affirm on the basis of the orphans' court's opinion. Specifically, we agree with the orphans' court that termination of Mother's parental rights was warranted under Section 2511(a)(1). *See id.* at 3-4, 6. Further, we agree with the orphans' court's conclusion that termination was in Child's best interest pursuant to Section 2511(b). *See* Orphans' Ct. Op. at 5-6. Additionally, we conclude that Petitioners presented clear and convincing evidence in support of termination and the orphans' court did not abuse its discretion in granting the petition to terminate Mother's parental rights. *See H.H.N.*, 296 A.3d at 1263. Mother is not entitled to relief on her remaining claims. Accordingly, we affirm.[9]

_____

[9] The parties are directed to attach a copy of the orphans' court's opinion in the event of further proceedings.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/27/2025

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
COMMONWEALTH OF PENNSYLVANIA**

**ORPHANS' COURT DIVISION**

IN RE:                                          )
ADOPTION OF:                                    )
                                                )
MILA FAYE HARRISON,                             )     No.     62 of 2024
                                                )

**PURSUANT TO APPELLATE PROCEDURE RULE 1925(a)**
**ORDER OF COURT**

This matter was scheduled before the Court on a Petition for Involuntary Termination of Parental Rights under 23 Pa.C.S.A. § 2511, filed by Tyler Harrison, (hereinafter "Father") on July 3, 2024. Father sought to involuntarily terminate the parental rights of birth mother Rhiannon Leigh Heckman (hereinafter "Mother") so that the child, Mila Faye Harrison (hereinafter "Child"), could be adopted by his wife, Olivia Michel (hereinafter "Stepmother"), in order to create an intact nuclear family. The hearing on Father's Petition took place on November 7, 2024. Petitioners Father and Stepmother were represented by Ashley Lovelace, Esq., while Mother appeared along with her counsel, Randall Klimchock, Esq. Patricia Elliott-Rentler, Esq., appeared in the dual role as the Child's Guardian *ad Litem* and the attorney to represent the Child's legal interests. Based upon the Child's age and maturity, it was determined that Attorney Elliott-Rentler is able to perform both functions for the Child.

After careful consideration of the evidence presented at the hearing, the Petition to Involuntarily Terminate the Parental Rights as to Mother was granted based upon the findings of fact and applicable law.

1

The relevant portions of Section 2511, establishing the grounds under which a court may terminate parental rights, are as follows:

§ 2511. *Grounds for involuntary termination.*

(a) *General rule.* – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) *Other considerations.* – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

## I.     FACTUAL AND PROCEDURAL HISTORY OF THE CASE

The factual history of this case begins with the birth of the Child on June 8, 2022. Mother and Father had separated approximately two months before the birth of the Child. Mother had suffered a traumatic event when another child of hers was tragically killed. Almost immediately following the Child's birth, Father filed a complaint for custody in September 2022. The current custody order between the parties has been in place since March 1, 2023, with Father maintaining primary physical custody. At that time, and since that point, Mother allotted supervised partial physical custody with supervision to be provided by a licensed agency. Mother has not taken

2

advantage of this opportunity for supervised partial physical custody; it is reported by Father that Mother has not seen the Child since December 2022 when the Child was only six months old. Mother's testimony indicated that she was able to obtain some financial support that she was planning to allocate to pay for periods of supervised custody, but the majority of those funds were put toward supervised custody scheduling with the Child's sibling. According to Father's testimony, Mother has sporadically contacted him to ask if she can provide formula or other items – even after the Child was developmentally beyond such needs.

Father testified that Stepmother has shared in performing the parental duties for the Child with him in Mother's absence. Father and Stepmother believe they are in the best position to care for the Child's special needs, as she has a cyst on her pituitary gland. The Child identifies Stepmother as her mother; it is unclear if the Child would recognize Mother, since her last in-person contact with the Child would have been over two years ago.

## II.  ANALYSIS

On appeal, Mother first argues that the Court erred in finding that Father and Stepmother reached the evidentiary burden pertaining to Section 2511(a)(1) and (2), in light of Mother's cumulative efforts to maintain a relationship with the Child, and the burden under Section 2511(b) in showing whether termination would best serve the developmental, physical and emotional needs and welfare of the Child. Lastly, Mother argues that the Court did not give due consideration to the evidence presented related to Father's conduct, both past and present, and its impact on the best interest of the Child.

3

*1. Factual Sufficiency of Findings Pursuant to Section 2511(a)(1) and (2)*

First, the Court will address whether termination was warranted based upon the facts supported by the record under Section 2511(a)(1), (2) and (b) of the Adoption Act. It is a well-settled principle of law that an appellate court's standard of review in a parental rights termination matter is such that the appellate court will "accept the findings of fact and credibility determinations made by the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Before finding sufficient grounds to terminate parental rights under Section 2511(a)(1), the court must consider more than whether the parent has not maintained contact for a six-month period prior to the filing of the petition to terminate rights. *In re: K.C.W.*, 456 Pa.Super. 1 (1997). The court must also consider any barriers that a parent faced during said period and whether the parent exhibited reasonable firmness in his or her attempt to overcome those barriers. *Id.*

The evidence presented to the Court indicated that Mother had not had seen the Child since December 2022. She has not performed any parental duties since shortly after Father obtained custody in October 2022. This evidence is sufficient to establish grounds under Section 2511(a)(1).

Under Section 2511(a)(2), termination is warranted where a parent demonstrates an incapacity or refusal to parent and the circumstances surrounding the incapacity or refusal cannot or will not be remedied. The above evidence clearly establish that Mother has either refused to parent or is incapable of doing so, and because it has been since December 2022 that she has not maintained contact with the Child, the Court may infer that the refusal or incapacity will not be remedied.

For these reasons, the Court found that Father satisfied the evidentiary burden under Section 2511(a)(1) and (2).

4

## 2. *Factual Sufficiency of Findings Pursuant to Section 2511(b)*

Mother further argues that the Court erred in finding that Father and Stepmother carried their burden in establishing that the best interest of the Child will be served through termination of Mother's rights. During the hearing, Father testified, and Mother mostly confirmed, that Mother had little to no contact with the Child over the last two years. Mother was not aware of any special needs caused by the Child's pituitary cysts. Mother had not provided any support for Father and the Child, aside from sporadically offering to buy an item from time to time. Instead, the Child relies on Stepmother and Father to perform parental duties and seeks safety and comfort from them exclusively.

For these reasons, the Court found that severing the parental rights of Mother would be in the Child's best interest.

## 3. *Consideration of Father's Past and Present Conduct*

Lastly, Mother contends that the Court erred by not taking into account the evidence of Father's past and present conduct and whether such conduct is in the best interest of the Child. The Court notes that Mother was permitted to introduce some evidence, over the objection of Father's counsel, related to Father's initial involvement with the Child so that the Court could have a fuller picture of the historical relationship between the parties. Evidence pertaining to Father's specific conduct in regards to parenting choices are only tenuously relevant to a termination proceeding regarding Mother's own parental rights. If this evidence was introduced during a custody proceeding, the Court would be able to find evidence of Father's conduct relevant. As such, the Court did not err in failing to consider any evidence of Father's prior or current conduct.

5

### III. CONCLUSIONS

Following a one-day trial on this matter, the Court found that Father and Stepmother were able to present sufficient evidence to justify termination of Father's parental rights under Section 2511(a)(1) and (2) of the Adoption Act. Additionally, the Court found that termination would serve the best interest of the Child under Section 2511(b). The Court gave due consideration to the minimal efforts made by Mother to maintain a relationship and perform parental duties on behalf of the Child. Likewise, the Court gave due consideration to the evidence presented as to the nature of the bond between Mother and Child and the impact of severing any such bond. After considering all of these factors, the Court found that the best interest of the Child would be served through an adoption by Stepmother and the creation of an intact family.

For all of the foregoing reasons, the Court involuntarily terminated the parental rights of Rhiannon Heckman, birth mother of the minor child Mila Faye Harrison.

BY THE COURT:

_____, J.
JUDGE JUSTIN M. WALSH

ATTEST:

_Jonathon A. Wian_
Clerk of Orphans' Court

cc:    Ashley Lovelace, Esq. – Counsel for Petitioners Fatther/Stepmother
       Randall Klimchock, Esq. – Counsel for Birth Mother
       Patricia Elliott-Rentler, Esq. – Guardian *ad litem*

6