J-S15028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| Jordan Gross | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| Tiffany Vega | : | |
| | : | |
| Appellant | : | No. 2538 EDA 2025 |

Appeal from the Order Entered September 15, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2023-03223-CU

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 14, 2026**

In this child custody action between Jordan Gross (Father) and Tiffany Vega (Mother) regarding their minor child, A.G. ("the Child" or "Child") (a daughter born in September 2015) Mother appeals, *pro se*, from the final custody order that retained the parties' existing arrangement regarding legal and physical custody, but (1) modified the parties' respective transportation responsibilities for custody exchanges; and (2) required Mother to submit to hair follicle drug testing, at Father's expense.  After careful consideration, we affirm.

The evidence adduced at the custody trial establishes that the parties began dating in 2014.  N.T., 9/8/25, at 21.  Though the parties never married,

_____

[*] Former Justice specially assigned to the Superior Court.

during their relationship, they resided together in Chester County. *Id.* at 21-22. Child was born in 2015, during the parties' relationship. *Id.* The parties separated in 2021. *Id.* After the separation, Father moved out of the parties' residence and temporarily resided with his parents (Paternal Grandparents) in Quarryville, Lancaster County. *See id.* at 23, 79; N.T., 9/9/25, at 44. In 2023, Father moved into the residence of his current wife (Je.G.), located in Bucks County.[1] N.T., 9/8/25, at 23, 58.

Since the parties' separation, Child has resided primarily with Mother in Avondale, Chester County, where Child attends elementary school in the Avon Grove School District. *Id.* at 42-43. Mother is employed as a farm manager in and around Chester County. *Id.* at 18. At Mother's home, Child resides with her 16-year-old stepbrother. *Id.* at 46. Mother also has extended family in Chester County. *Id.* at 38, 43, 46.

Father resides in Tullytown, Bucks County,[2] with his wife, Je.G., and Je.G.'s two children, who are 12 and 15 years of age, respectively. *Id.* at 58. Father testified that Child and Je.G.'s children "get along great[.]" *Id.* at 77.

_____

[1] There is no indication in the record that Father filed a petition for relocation, nor that Mother objected to Father's move. Since the parties' separation, Mother has been the primary custodial parent. Father has exercised physical custody every other weekend.

[2] Tullytown is located approximately 65 miles northeast of Mother's residence in Avondale. At the custody trial, the parties both testified that their respective residences are separated by approximately an hour-and-a-half drive. N.T., 9/8/25, at 47, 74.

Father works full-time in the field of waste management. *Id.* at 59, 81. Father does not have any extended family in Bucks County, but Je.G.'s family resides in that area. *Id.* at 79-80.

Father initiated this action by filing a complaint for custody, *pro se*, on May 9, 2023. Father sought an order awarding the parties shared legal and physical custody. Complaint, 5/9/23, ¶ 3. On June 20, 2023, the parties participated in a custody conciliation conference.

On June 26, 2023, the trial court entered an interim custody order, awarding the parties shared legal custody and awarding Mother primary physical custody, subject to Father's periods of partial custody.[3] Custody Order, 6/26/23, ¶¶ 1-3. The order required Father to exercise his custodial periods at Paternal Grandparents' residence. *Id.* ¶ 3(c). The order additionally acknowledged that it "results in a change in primary custody that is not agreed upon by the parties[,]" and advised the parties as to their right to seek review of the order. *Id.* ¶ 9. The trial court scheduled the matter for an evidentiary hearing on August 1, 2023.

_____

[3] The interim custody order granted Father partial custody every other weekend, including long weekends in the summer. Custody Order, 6/26/23, ¶ 3(a), (b). With respect to custody exchanges, the order stated that all exchanges would occur either at Child's school in Avondale or, if school is not in session, at a Walmart store located in Chester County. *Id.* ¶ 7.

In the ensuing months, both parties filed multiple *pro se* petitions for civil contempt,[4] and the trial court convened several contempt hearings. As the presiding trial court judge, the Honorable Alita A. Rovito (Judge Rovito), noted in her Pa.R.A.P. 1925(a) opinion, "[t]he parties are two of the most litigious people [Judge Rovito] has seen in her over thirty (30) years as a family court hearing officer, private family lawyer and judge." Trial Court Opinion, 12/30/25, at 1.

In one of his contempt petitions, Father asserted that

[Mother] has a pending drug charge for selling [controlled substances] to an undercover police officer. [Mother] has used methamphetamine for years and [Father] believe[s Mother] is still using [drugs] due to her er[r]atic behavior.

Petition for Civil Contempt, 8/1/23 (Criminal Record/Abuse History Verification, ¶ 5).

On November 22, 2023, Father filed a petition for modification of custody.[5] Father sought modification of the provision of the interim custody

_____

[4] At all relevant times, Mother proceeded *pro se*. Father has also proceeded *pro se* throughout most of the litigation.

[5] Pursuant to Section 5328 of the Child Custody Act, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a); *see also J.P. v. J.S.*, 214 A.3d 1284, 1290 (Pa. Super. 2019) ("Petitions for modification of custody orders may be entertained at any time without regard to whether there have been any material changes which would warrant a reevaluation." (citation omitted)). A party requesting modification of custody "has the burden to show that modification is in the child's best interest." *J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super. 2010) (citation omitted); *see also Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa. Super. 2004) ("A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement.").

order that required him to exercise physical custody at Paternal Grandparents' residence. Petition for Modification of Custody, 11/22/23, ¶ 4. Father pointed out that he had moved to Bucks County and asserted, therefore, Paternal Grandparents' residence was no longer an appropriate location for Father to exercise custody. *Id.* Father sought to exercise custody at his current residence, where he resides with Je.G. and his stepchildren. *Id.* ¶¶ 1, 4.

The parties participated in a custody conciliation conference on January 22, 2024. On January 30, 2024, the trial court entered a modified custody order. The only changes the court made to the prior custody order pertained to (1) granting Father's request to exercise physical custody at his current residence; and (2) the location designated for custody exchanges. *See* Order, 1/30/24, ¶ 3.

On October 14, 2024, Mother filed a petition for modification of custody, seeking a modification of the physical custody schedule and an order that Father's custodial periods be supervised. Mother asserted this modification was appropriate because

> [Father's] actions, including the involvement of [Je.G.], has
> jeopardized the health of [] Child. [Father has c]onsist[e]ntly
> disrupted, caused conflict, and created confusion.

Petition for Modification of Custody, 10/14/24, ¶ 4 (punctuation modified). The trial court conducted a hearing on Mother's petition on November 20, 2024.[6]

By order entered on November 25, 2024, the trial court denied Mother's petition for modification. The court found that

> according to Mother, the Child suffers from asthma and [Mother] does not believe that Father is following the Child's care plan. Upon consideration of the evidence presented at the [November 20, 2024,] hearing, the court does not believe that the Child's safety or well-being is currently at risk such that a change in custody, or the imposition of supervised visits for Father, is warranted.

Order, 11/25/24, n.1 (capitalization and punctuation modified).

The matter proceeded to a custody trial before Judge Rovito on September 8 and 9, 2025. At trial, Mother announced she sought an order requiring that all of Father's periods of physical custody be professionally supervised. N.T., 9/8/25, at 47-48. Father stated that he desired to "keep [] the same" legal and physical custody arrangement. *Id.* at 76.

Pertinently, Father testified that, during the parties' relationship, Mother used methamphetamine, and it was her drug abuse that precipitated the parties' separation. *Id.* at 69; *see also id.* at 106 (Father testifying that the parties' relationship "was good in the beginning. And then the drugs came along and ruined it."). Father testified, "I don't know if [Mother] is still on

_____

[6] The November 20, 2024, hearing was not transcribed.

- 6 -

drugs, but she has a history of drugs, [and] she has an open case for drugs." *Id.* at 70; *see also id.* at 82 (Father stating the last time he observed Mother use methamphetamine was in 2022 or 2023).

Judge Rovito then stated on the record that she had presided over Mother's criminal case, which "was withdrawn. [Mother] was found not guilty." *Id.* at 72; *see also* Trial Court Opinion, 12/30/25, at 2 (observing that, in 2022, Mother was charged with possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30); possession of a controlled substance, *id.* § 780-113(a)(16); and criminal use of a communication facility, 18 Pa.C.S.A. § 7512(a)).

Additionally, Judge Rovito interviewed Child, who was nine years old at the time, *in camera*. Child testified that she desired the physical custody schedule to remain the same during the school year, but during the summers, she would like the parties to exercise alternating, weekly custody. N.T., 9/9/25, at 6. Child stated that she desired more time with Father in the summers because "we don't really have a lot of time" under the current custody schedule. *Id.*

At the conclusion of the custody trial, Judge Rovito addressed in detail each of the statutory custody factors set forth in section 5328(a) of the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340. *See* N.T., 9/9/25, at 20-36; *see also* 23 Pa.C.S.A. § 5328(a). With respect to the custody factor regarding the "history of drug or alcohol abuse of a party or member of a party's

household," 23 Pa.C.S.A. § 5328(a)(14), the following exchange occurred at

trial:

> THE COURT: … [W]e all [ac]knowledge that [Mother] was arrested for [PWID]. [Mother] was acquitted of all the charges…. So none of that weighs against her. I don't see any evidence of drug use. So I'm not really sure what to do with that factor. [Father] said that [Mother's drug use] was a problem, and, you know, I don't -- [Mother], was it ever a problem?
>
> [Mother]: No.
>
> THE COURT: Did you ever use drugs on a regular basis -- I mean --
>
> [Mother]: 2014[.] I had -- yes, I did. But I've been sober since 2014.
>
> * * *
>
> THE COURT: So [Father's] allegation that there were issues [regarding] drugs at the time you ended your relationship [is] not true?
>
> [Mother]: That's not the reason why we split, no.
>
> THE COURT: So that may not have been the reason that you split, but … [Father] said you were using drugs.
>
> * * *
>
> THE COURT [(speaking to Father)]: Were you using drugs at that time?
>
> [Father]: No.
>
> THE COURT: Okay. So, [] it comes to a point, like, what do I do here, right? I mean, I don't know, [**Mother**]**, would you be willing to take a hair follicle test?**
>
> [Mother]: **I sure would.**

N.T., 9/9/25, at 33-34 (emphasis added).

Father agreed to bear the expense of Mother's drug test and to submit to a drug test himself, at his expense. *Id.* at 34. Father also agreed to participate in court-ordered anger management courses and psychological therapy. *Id.* at 36-37.

Judge Rovito then announced her ruling with respect to the parties' physical custody schedule: "I am not changing the schedule. I am not going to supervised [custody for Father] because I don't believe it's necessary. … I'm going to keep the summer the way it is." *Id.* at 37. Judge Rovito further stated she would be modifying the existing custody order's provision regarding transportation/custody exchanges,[7] declaring that "the retrieving party is going to do transportation[.]" *Id.* at 39.

On September 15, 2025, Judge Rovito entered the final custody order that is the subject of this appeal. The order made no change regarding legal or physical custody of Child. *See* Order, 9/15/25, ¶¶ 1-3. However, the court imposed a requirement for both parties to undergo hair follicle drug testing, at Father's expense. *Id.* ¶ 9(e). The court also modified the parties' respective transportation responsibilities, stating as follows:

> The retrieving party shall provide transportation. Father will meet Mother at the Avondale Pennsylvania State Police barracks and Mother will meet Father at the Tull[]ytown Police Department.

---

[7] Pursuant to the existing custody order, all custody exchanges occurred in Chester County, not far from Mother's residence. *See* Order, 1/30/24, ¶ 7; *see also* N.T., 9/8/25, at 37-38.

*Id.* ¶ 7. Finally, the order imposed other provisions that are not pertinent to this appeal. *See id.* ¶ 8 (governing communication between the parties), ¶ 9 (special terms, including orders for Father to participate in psychological counseling and to complete an anger management course).

On September 16, 2025, Mother filed a motion for reconsideration of the custody order.[8] Mother asserted the order improperly imposed "a disproportionate transportation burden on [Mother]." Motion for Reconsideration, 9/16/25, ¶ 3.

> [Father] voluntarily relocated to Bucks County without prior [c]ourt approval or notice, creating the increased distance. Historically, [Father] has provided transportation for custody exchanges. It is unreasonable to shift this burden to [Mother], who did not create the distance and already bears the majority of parenting responsibilities.

*Id.* ¶¶ 5-6 (paragraph numbering omitted). Accordingly, Mother asked the trial court to "[m]odify the transportation provisions so that [Father] is solely responsible for transportation for custody exchanges, given that he voluntarily relocated." *Id.* ¶ 14(a).

In her motion for reconsideration, Mother also sought vacatur of the provision requiring the parties to submit to drug testing:

> At trial, the [trial c]ourt expressly acknowledged that there was no evidence or suspicion of drug use on [Mother's] part. [Mother] has never tested positive for any substance and has never been accused of substance abuse. The requirement is invasive, unnecessary, and stigmatizing. [Mother] only agreed to such

_____

[8] Father neither petitioned for reconsideration of the custody order nor filed an appeal. In the instant appeal, Father did not file an appellee's brief.

testing under pressure at trial, not because it was warranted by evidence.

*Id.* ¶¶ 8-10 (paragraph numbering omitted); *see also id.* ¶ 14(b).

By order entered on September 24, 2025, the trial court denied Mother's motion for reconsideration to the extent it sought modification of the provision regarding transportation/custody exchanges. Order, 9/24/25, ¶ 1. However, the court granted relief, in part, with respect to the drug testing requirement, stating as follows:

> Drug testing requirement is granted in part and denied in part. It is granted with respect to [Father,[9]] as there was no event or suspicion of drug use on his part. It is denied with respect to [Mother,] as she has admitted to prior drug use. The custody order [entered on] September 1[5], 2025, is hereby amended to reflect this change. All provisions of the September 1[5], 2025, order remain[] in full force and effect.

*Id.* ¶ 2 (footnote added; bold omitted; capitalization and punctuation modified).

_____

[9] In its Rule 1925(a) opinion, the trial court explained that, after the custody trial, Father sent an email to the court, and carbon copied Mother, requesting the court to remove the drug testing requirement as it pertained to Father. Trial Court Opinion, 12/30/25, at 4. Father complained that he would suffer an unnecessary financial burden if he was required to pay for both parties' drug tests. *Id.*

On October 1, 2025, Mother timely filed a notice of appeal.[10]  One day later, Mother filed a Pa.R.A.P. 1925 concise statement of errors complained of on appeal.[11]

_____

[10] Also on October 1, 2025, Mother filed a motion to stay enforcement of the September 15, 2025, custody order pending this appeal.  The trial court denied Mother's motion on October 22, 2025.  Separately, on October 20, 2025, Mother filed an application in this Court requesting a stay, which we denied on October 24, 2025.

[11] In children's fast track cases, appellants are required to file a concise statement of errors **contemporaneously** with the notice of appeal.  **See** Pa.R.A.P. 1925(a)(2)(i); **see also** Pa.R.A.P. 905(a)(2).  In **In re K.T.E.L.**, 983 A.2d 745 (Pa. Super. 2009), this Court opined that an appellant's failure to file a Rule 1925(a)(2)(i) concise statement contemporaneously with the notice of  appeal "will result in a defective notice of appeal," and that an appellate court should dispose of such matters on a case-by-case basis pursuant to our Supreme Court's decision in **Stout v. Universal Underwriters Ins. Co.**, 421 A.2d 1047 (Pa. 1980).  **In re K.T.E.L.**, 983 A.2d at 747.  The **Stout** Court held that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the party [moving for quashal of the appeal] has suffered no prejudice."  **Stout**, 421 A.2d at 1049; **see also In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1286 (Pa. Super. 2011) (declining to quash appeal in a children's fast track case, where the appellant failed to comply with Rule 1925(a)(2)(i), but subsequently complied with an order of court directing her to file a concise statement).

Instantly, Mother corrected her procedural non-compliance by filing her concise statement one day after her notice of appeal.  As Mother promptly cured the defect, it in no way impeded the trial court's ability to issue its Rule 1925(a) opinion, and there is no discernable prejudice to Father (nor did he object), we decline to quash the appeal and proceed to address the merits of Mother's issues.  **See In re Adoption of Z.S.H.G.**, 34 A.3d at 1286; **see also In the Int. of R.P.**, 344 A.3d 783, 789 n.5 (Pa. Super. 2025) (stating that "this Court construes *pro se* filings liberally.").

On October 17, 2025, Father filed a petition for special relief seeking to compel Mother to submit to a drug test, per the terms of the September 15, 2025, custody order. Mother filed a response on October 20, 2025. On December 5, 2025, the trial court conducted a hearing on the matter, at which both parties appeared *pro se*. At the conclusion of the hearing, the trial court announced its intention to enter an order placing Mother on a schedule for regular drug tests. N.T., 12/5/25, at 5; *see also* Order, 12/9/25 (granting Father's petition for special relief and compelling Mother to submit to a hair follicle drug test, within 10 days of the order, at Father's expense).

On December 30, 2025, the trial court issued its Rule 1925(a) opinion. The court stated therein that

> [b]oth parties are responsible for the conflict and stress [Child] is experiencing due to their contentious relationship and what appears to be [Child's] over-involvement, contributed to by both parties. Father, to a degree, recognizes he has issues but does nothing about them. Mother does not recognize her issues and therefore, presents as an injured and innocent party even though that is far from the objective view of this litigation.

Trial Court Opinion, 12/30/25, at 2. The trial court additionally stated that it

> is compelled to inform this [C]ourt that Mother still has not [submitted to] a drug test and the issue has been raised once already before the court[,] and is scheduled to be heard yet again. Mother's blatant disregard for the court's Order is concerning to this court as more than 90 days has passed since Mother was ordered to submit, raising a concern that she is attempting to manipulate the court and test results.

*Id.* at 4 n.8.

On appeal, Mother presents three issues for our consideration:

1. Whether the trial court abused its discretion by granting Father unsupervised partial physical custody despite record evidence, including [Child's] in-chambers interview and the [trial] court's own findings, demonstrating that the Child was experiencing emotional burden, psychological stress, and harm from ongoing parental conflict and hostility.

2. Whether the trial court abused its discretion by ordering and continuing invasive hair follicle drug testing[,] where the certified record contained no competent evidence of [Mother's] current drug use, impairment, or risk to the Child, and where the court expressly acknowledged the absence of any ongoing drug problem.

3. Whether the trial court abused its discretion by *sua sponte* modifying transportation logistics after Father relocated approximately one[-]and[-]a[-]half hours away, without conducting a best-interest analysis under 23 Pa.C.S.[A.] § 5328(a), without considering the Child's routine and school schedule, and without providing Mother a meaningful opportunity to be heard regarding feasibility and burden.

Mother's Brief at 4 (issues reordered; some capitalization modified).

We consider Mother's issues according to the following standard and scope of review:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

- 14 -

> We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***Rogowski v. Kirven***, 291 A.3d 50, 60-61 (Pa. Super. 2023) (internal citations and brackets omitted; formatting modified).

"It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion[.]" ***King v. King***, 889 A.2d 630, 632 (Pa. Super. 2005) (citation and some internal quotation marks omitted); ***see also A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) ("Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." (citation omitted)).

> This Court has stated that
>
> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***B.S.G. v. D.M.C.***, 255 A.3d 528, 533 (Pa. Super. 2021) (citations and brackets omitted). Further, "[t]he parties cannot dictate the amount of weight the trial court places on evidence." ***R.M.G. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009) (citation omitted).

In all child custody matters, the "paramount" concern is the best interests of the child. **S.W.D. v. S.A.R.**, 96 A.3d 396, 403 (Pa. Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).

When awarding any form of custody, the trial court is required to consider the child's best interests pursuant to the sixteen custody factors set forth in section 5328(a). **See** 23 Pa.C.S.A. § 5328(a); **see also id.** § 5323(d) (requiring a trial court to "delineate the reasons for its decision on the record in open court or in a written opinion or order."). However, this Court has recognized that

> [m]any custody-related issues raised in motions … [implicate] a single discrete and narrow issue **ancillary to the award of custody**. It would be burdensome for a trial court to have to consider all sixteen [section 5328(a)] factors explicitly on the record every time a litigant argues a motion seeking, for example, to change the custody exchange location or to decide whether a child plays sports in one parent's municipality or the other's. Without a doubt, a trial court must consider a child's best interest in ruling upon such motions. **But our statutes require neither a consideration of all sixteen factors nor delineation of the court's rationale on the record unless the ruling awards custody or modifies an award of custody**.

**M.O. v. J.T.R.**, 85 A.3d 1058, 1063 n.4 (Pa. Super. 2014) (emphasis added).

Nevertheless, "[e]ven where a trial court need not consider and address the [section] 5328(a) factors, it still must consider the child's best interest in custody matters[,]" as "the child's best interest is still paramount." **S.W.D.**,

- 16 -

96 A.3d at 403 (citing *M.O.*, 85 A.3d at 1063); *see also* 23 Pa.C.S.A. § 5338(a) (modification of custody orders).

Instantly, in her first issue, Mother claims that

the trial court abused its discretion by granting [Father] unsupervised custody despite substantial record evidence, including the Child's in-chambers interview and the court's own findings, demonstrating that the Child was experiencing significant emotional burden, psychological stress, and conflict exposure.

Mother's Brief at 30 (capitalization modified); *see also id.* at 26-30. According to Mother, the trial court improperly "expanded Father's unsupervised partial physical custody without implementing protective measures designed to reduce the [C]hild's exposure to conflict or emotional stress." *Id.* at 29. Mother complains the court failed "to meaningfully apply the statutory best-interest [factors set forth in section 5328(a)], particularly the factors relating to emotional and psychological wellbeing." *Id.* at 30.

Before we reach the merits of Mother's issue, we must determine whether she properly preserved it for our review. *See*, *e.g.*, *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (stating the fact that an appellant "filed a timely Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation."); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Mother did not raise this issue in her Rule 1925 concise statement, nor is it in any way fairly suggested thereby. *See generally* Concise Statement, 10/2/25. Therefore, the trial court did not address Mother's instant issue in its Rule

1925(a) opinion.[12] **See Tucker**, 939 A.2d at 346 (stating that "Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." (citation omitted)); **see also S.S. v. T.J.**, 212 A.3d 1026, 1032 (Pa. Super. 2019) (same).

As this Court has observed,

> Rule 1925 [] states that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." **Lord**, 719 A.2d at 309. This Court has held that "[o]ur Supreme Court intended the holding in **Lord** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" **Greater Erie Indus. Dev. Corp.**

---

[12] In its opinion, the trial court, citing **M.O.**, *supra*, stated that because Mother's "matters complained of on appeal are related not to the custody schedule but to ancillary matters, the [court] is not required to address the custody factors" of section 5328(a). Trial Court Opinion, 12/30/25, at 2 (footnote omitted). Here, similar to the situation in **M.O.**, the trial court made **no change** regarding legal or physical custody when it entered the September 15, 2025, custody order. Instead, as we discuss *infra* in connection with Mother's second and third issues, the trial court ruled on "discrete and narrow issue[s] ancillary to the award of custody." **M.O.**, 85 A.3d at 1063 n.4. Therefore, the trial court was not required to analyze the section 5328(a) custody factors, and instead was required to consider whether its custody order is in Child's best interest. **S.W.D.**, 96 A.3d at 403. Based on the foregoing, the record belies Mother's assertion that the trial court "expanded" Father's physical custody time via the September 15, 2025, custody order. Mother's Brief at 29.

*v. Presque Isle Downs, Inc.*, … 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original).

*U.S. Bank, N.A. v. Hua*, 193 A.3d 994, 996-97 (Pa. Super. 2018) (some citations omitted); *see also Greater Erie Indus. Dev. Corp.*, 88 A.3d at 224 (explaining that "it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statements.").

Moreover, we cannot accord special relief to Mother merely because of her *pro se* status. As this Court cautioned in *Satiro v. Maninno*, 237 A.3d 1145 (Pa. Super. 2020),

> [w]hile this Court is willing to liberally construe materials filed by a *pro se* litigant, … [an] appellant is not entitled to any particular advantage because [s]he lacks legal training. As our Supreme Court has explained, any layperson choosing to represent h[er]self in a legal proceeding must, to some reasonable extent, assume the risk that h[er] lack of expertise and legal training will prove h[er] undoing.

*Id.* at 1151 (citation omitted; capitalization modified).

Based upon the foregoing, Mother's first issue is waived. *See Lord*, 719 A.2d at 309; Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a); *see also S.S.*, 212 A.3d at 1032-33 (in a child custody case, concluding the *pro se* appellant/father had waived all issues on appeal, where his rambling concise statement failed to comply with *Lord* and its progeny, and it "is neither concise nor sufficiently specific and coherent to allow the trial court to understand the specific allegations of error and offer a rebuttal."). Accordingly, as Mother failed to preserve her first issue for our review, it merits no relief.

In her second issue, Mother claims the trial court abused its discretion in ordering her to submit to a drug test, where (1) there was no evidence of record that Mother currently had a drug abuse problem or that she posed a safety risk to Child; (2) "the issue of drug testing was not raised in the pleadings or pre-trial proceedings"; and (3) "the trial court initially ordered mutual [drug] testing but later imposed unilateral testing [of Mother alone,] without new evidence." Mother's Brief at 13, 14 (capitalization modified; bold omitted).[13] Regarding the third point mentioned above, Mother asserts that the trial court's "unilateral removal of the testing requirement as to Father was influenced by an informal communication," *i.e.*, an email from Father to the trial court, "rather than a procedurally filed motion or new record evidence." ***Id.*** at 14-15.

Mother further contends the trial court improperly "relied on past allegations and [Mother's] prior arrest resulting in acquittal, without any findings connecting [drug] testing to present risk or the [C]hild's safety under 23 Pa.C.S. § 5328(a)." ***Id.*** at 18; ***see also id.*** at 16 ("The record is devoid of testimony that Mother appeared impaired, engaged in unsafe conduct, or placed the [C]hild at risk due to substance use at any time relevant to the proceedings."). Mother complains that the trial court, in its opinion,

> reiterates that testing was required based on [Mother's] prior history rather than any present evidence of substance abuse or

_____

[13] Mother's second and third issues, unlike her first issue, are preserved, as these issues are fairly suggested by her concise statement.

- 20 -

risk to the [C]hild. This reasoning directly conflicts with the trial record, where the [trial] court repeatedly stated that there was no evidence of current drug use and no ongoing drug problem.

*Id.* at 16 (citation omitted). Mother avers "the continued imposition and enforcement of invasive drug testing constitutes a manifest abuse of discretion and should be vacated." *Id.* at 18.

This Court has recognized that a trial court possesses broad authority, pursuant to Pa.R.C.P. 1915.8, to order a party in a child custody action to undergo any mental and physical examinations the court deems appropriate. *See Luminella v. Marcocci*, 814 A.2d 711, 720 (Pa. Super. 2002); *see also* Pa.R.C.P. 1915.8, cmt. (explaining that Rule 1915.8 is intended to address "the process for any number of expert evaluations a court may order in a custody case, including, but not limited to, … custody and/or drug and alcohol evaluations[.]"). We review a trial court's imposition of an evaluation under Rule 1915.8 for an abuse of discretion. *See Jordan v. Jackson*, 876 A.2d 443, 455 (Pa. Super. 2005) (holding, "[i]t is clearly within the court's discretion whether to order an evaluation" under Rule 1915.8).

Instantly, Judge Rovito, in her Pa.R.A.P. 1925(a) opinion, noted that she had previously

> presided over a criminal jury trial wherein Mother was charged with [PWID], possession of a controlled substance, and criminal use of a communication facility, [charges of which the jury acquitted Mother]. The arrest stemmed from [law enforcement's] use of a confidential informant to purchase drugs from Mother. It is well known the burden of proof in a criminal case is the highest standard, beyond a reasonable doubt. [*See Commonwealth v. Batts*, 163 A.3d 410, 453 (Pa. 2017) ("Proof beyond a reasonable

- 21 -

doubt … is a criminal standard and carries the highest evidentiary burden.").]  The [trial] court did state that Mother's criminal trial will not be weighed against her.  N.T., 9/9/25, at 16, 17.  The court did not consider [Mother's] arrest and trial in developing the custody schedule; however, the court did order a hair follicle test, at Father's request, **as a tool to confirm Mother's statement that she has** [**abstained from drug use**] **since 2014**, despite saying she [previously] used [drugs] regularly but did not have a [drug] problem.  *Id.*  The court initially ordered both parties to have a hair follicle test; however, Father reasonably objected as there are no allegations he had a past or current drug problem.

\* \* \*

Due to Mother's prior drug use and her recent not guilty verdict, and **while weighing the best interest of the Child**, the [trial] court did not abuse its discretion in requiring [Mother] to submit to a drug test.

Trial Court Opinion, 12/30/25, at 2-4 (some footnotes omitted; footnote record citations modified and moved to body; emphasis added; capitalization and punctuation modified).

Our review confirms that the trial court's analysis is supported by the record, and its legal conclusion is sound.  *See id.*  We reiterate that, at the conclusion of the custody trial, Mother **agreed** to submit to a drug test, upon inquiry by the trial court, provided that Father bore the expense of Mother's test.  *See* N.T., 9/9/25, at 34 (Mother testifying, "I sure would" submit to a drug test).

Our review of the record confirms that the trial court's consistent and paramount focus was on Child's best interest.  *See A.V.*, 87 A.3d at 820 (stating an appellate court must not disturb a custody order, where "the trial court's consideration of the best interest of the child was careful and thorough,

and we are unable to find any abuse of discretion." (citation omitted)). We discern no abuse of the trial court's sound discretion in finding that Mother's participation in a drug test, to which Mother explicitly agreed, was in Child's best interest. *See B.S.G.*, 255 A.3d at 533 (stating appellate courts should "**accord**[] **the utmost respect**" to "the discretion that a trial court employs in custody matters," and observing that "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." (emphasis added; citation omitted)). Although Mother may be displeased with the trial court's imposition of the drug testing requirement, her displeasure does not equate with an abuse of the trial court's discretion. *See Rogowski*, *supra* (defining abuse of discretion).

Judge Rovito was thoroughly familiar with the parties and was in the best position to observe the parties and Child, and to assess their demeanor and testimony. *See B.S.G.*, *supra*. Faced with a cold record, we decline Mother's invitation to substitute our judgment for that of the factfinder.

Further, to the extent Mother suggests the trial court was required to evaluate the 16 custody factors of section 5328(a) when making its decision, *see* Mother's Brief at 18-19, she is mistaken. In imposing the drug testing requirement, the trial court was resolving a "discrete and narrow issue ancillary to the award of custody." *M.O.*, 85 A.3d at 1063 n.4. Accordingly, the trial court, in imposing this requirement, was not required to consider the

16 factors of section 5328(a).[14] ***See id.***; ***see also S.W.D.***, 96 A.3d at 404 (stating that where the intervention by the trial court in a child custody action "does not affect the form of custody, [] hence, the [section] 5328(a) best interest factors do not all have to be considered." (punctuation modified)); ***M.B.S. v. W.E.***, 232 A.3d 922, 930 (Pa. Super. 2020) (stating that "because the trial court did not decide physical or legal custody, or change the amount of custodial time that either party had with the children, its failure to examine the [section 5328(a)] factors was not error").

Based on the foregoing, we conclude the trial court did not abuse its ample discretion in ordering Mother to submit to a drug test, as it was in furtherance of Child's best interests. Accordingly, Mother's second issue merits no relief.

In her third and final issue, Mother argues the trial court abused its discretion by *sua sponte* modifying the provision of the parties' prior custody order governing transportation and custody exchanges. ***See*** Mother's Brief at 18-26. Mother contends the court improperly imposed this modification

> after Father relocated approximately one[-]and[-]a[-]half hours away, without conducting a best-interest analysis under 23 Pa.C.S.[A.] § 5328(a), without considering the [parties'] longstanding [custody] exchange arrangement, and without allowing Mother a meaningful opportunity to be heard regarding the feasibility of a three-hour round-trip drive. The record reflects

---

[14] In any event, we reiterate that at the conclusion of the custody trial, Judge Rovito thoroughly and competently addressed each of the section 5328(a) custody factors on the record. ***See*** N.T., 9/9/25, at 20-36; ***see also*** 23 Pa.C.S.A. § 5328(a).

that Father, not Mother, created the distance by relocating, yet the [trial] court shifted the transportation burden primarily onto Mother despite testimony that Father historically handled exchanges and did not object to driving.

*Id.* at 19; *see also id.* at 22-24 (Mother asserting the trial court erred in determining that it was not required to analyze the section 5328(a) factors, pursuant to *M.O.*, *supra*, because the matter of transportation was "ancillary" to the award of custody).

Mother argues the trial court, in finding that this modification furthered the Child's best interests, did not "analyz[e] the impact on the [C]hild's routine, school nights, or stability." *Id.*

Although Father did not seek relocation with the Child pursuant to 23 Pa.C.S.[A.] § 5337, his unilateral relocation substantially altered the distance between the parties and directly affected custodial logistics, feasibility of exchanges, and the Child's routine, all of which required a best-interest evaluation.

*Id.* at 20 (capitalization modified).

Mother contends that, at the custody trial,

[w]hen Mother attempted to explain that she should not bear the transportation burden resulting from Father's move and the resulting three-hour round-trip drive, the trial court did not meaningfully explore her concerns regarding feasibility, vehicle reliability, or the practical impact of extended travel. Instead, the court redirected the discussion and proceeded with its determination.

*Id.* at 22.

Finally, Mother asserts "the modification is manifestly unreasonable in light of the Child's best interest," where

- 25 -

under the new order, exchanges occurring near Father's residence at 6:00 p.m. result in the Child returning [to Mother's] home between approximately 7:30 p.m. and 8:00 p.m., on school nights, following a one-and-a-half-hour drive. The Child must then wake at approximately 6:30 a.m. for school, significantly compressing her evening routine, rest period, and overall stability.

*Id.* at 24 (capitalization and punctuation modified).

Section 5337 of the Child Custody Act sets forth a list of ten factors that a trial court must consider when a party requests to relocate with a child. 23 Pa.C.S.A. § 5337(h) (detailing the ten relocation factors and instructing courts to "giv[e] weighted consideration to those factors which affect the safety of the child"). A "custodial parent seeking to relocate with [a child bears] the burden of establishing that relocation is in [the child's] best interest." *D.K.D.*, 141 A.3d at 573 (citing 23 Pa.C.S.A. § 5337(i)). Section 5322 defines relocation as "[a] change in a residence of the child which substantially impairs the ability of a nonrelocating party to exercise custodial rights." *Id.* § 5322; *see also D.K. v. S.P.K.*, 102 A.3d 467, 472 (Pa. Super. 2014) (stating that "while relocation is in part defined by a change in residence of the child, it is evident that a relocation as contemplated in the statute requires a negative custodial impact on a 'nonrelocating party.'").

In *D.K.*, this Court stated that a consideration of the relocation factors of section 5337(h) "typically only 'applie[s] in cases **where the 'custodial' parent wishes to relocate with the child**[.']" *D.K.*, 102 A.3d at 476 (emphasis added) (quoting *Clapper v. Harvey*, 716 A.2d 1271, 1274 (Pa. Super. 1998)); *see also id.* at 473 (stating that "the legislature did not intend

- 26 -

for section 5337[] to apply in a custody case, where both parents have lived in their current residences for some time, and neither parent is relocating.").

Here, in her Rule 1925(a) opinion, Judge Rovito opined she properly exercised her discretion in modifying the parties' transportation provision:

> **Mother seems to misunderstand the relocation standard. Father did not [seek] to relocate with the [C]hild but to relocate himself.  [*See D.K.*, 102 A.3d at 476.]**  It is [Judge Rovito's] understanding that the party looking to relocate with the child needs to seek permission.  Further, ***Father moved many years ago* and Mother's complaint about the relocation issue has been waived.**[15]
>
> As to the sharing of transportation, Father testified that having the full burden does cause him to not be able to exercise his custodial time, due to the distance and time.  [***See****, **e.g.***, N.T., 9/8/25, at 76-77.]  Further, [**Father's**] **ability to drive [Child]**

---

[15] As this Court has observed, "[i]t is axiomatic that [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection **at the appropriate stage of the proceedings before the trial court**.  Failure to timely object to a basic and fundamental error will result in waiver of that issue."  ***State Farm Mut. Auto. Ins. Co. v. Dill***, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (emphasis added; citation and internal quotation marks omitted); ***see also*** Pa.R.A.P. 302(a), ***supra***.  The ***Dill*** Court further stated that "[o]**n appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected** or the alleged prejudice could have been mitigated."  ***Dill***, 108 A.3d at 885 (emphasis added; citation omitted); ***see also S.S.***, 212 A.3d at 1034 (stating that "a party may not use an appeal from the disposition of a petition for modification of custody as a substitute for an appeal from an underlying order for the purpose of relitigating matters pertaining to the underlying order."); ***J.C. v. K.S.***, 237 A.3d 1034, 1945 MDA 2019 (Pa. Super. 2020) (unpublished memorandum at 7-8) (concluding that the father/appellant in a child custody action had waived his challenge to the mother's relocation with the child, where father "failed to formally object when [m]other moved, back in April 2019[,]" and instead "waited approximately five months to seek redress."); Pa.R.A.P. 126(b) (providing this Court's unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value).

**back to the** [**Avondale**] **area for her events is very limited considering he will have driven round trip, per Mother, three (3) hours only to have to turn around the next morning to do the same trip, but this time with** [**Child**] **in the car for the three (3) hours. Father, so that** [**Child**] **does not miss her activities, will forfeit his time with her.** [Child] testified she enjoys her time [with Father] and it makes her sad that she cannot see him and get back for her events.[FN9 N.T., 9/9/25, at 6-7; *see also id.* at 30-31 (Child raising no objection when Judge Rovito asked Child, "So I'm thinking about having [Mother] pick you up from [Father]. Do you think that would be a bad thing?").]

---

[FN9] As the parties have been before [Judge Rovito] since [the custody] trial, Mother does not always take [Child] and claims that it is due to [Child]. The court struggles to find Mother credible on this issue.

---

The court recognizes that driving one way may be a burden for Mother[;] however, **the court ordered Mother's participation in the transportation** [**to serve**] **the** [**C**]**hild's best interest and to facilitate** [**Child's**] **relationship with Father.** The court is less concerned with the burden placed on driving [Child] one way than what is in [Child's] best interest.

Trial Court Opinion, 12/30/25, at 5-6 (FN9 in original; one footnote and emphasis added).

Our review confirms that the trial court's analysis is supported by the record and its legal conclusion is sound. *See id.* Mother presented no evidence that retaining the parties' prior transportation arrangement, under which Father bore the sole burden of driving three hours round-trip for **all** custody exchanges, would be of any benefit to Child, and instead focuses primarily on her own convenience.

Finally, there is no merit to Mother's claim that the trial court was required to evaluate section 5328(a)'s custody factors. *See* Mother's Brief at 22-24. As this Court stated in **S.W.D.**, *supra*, "it makes little sense for a trial court to analyze each of the sixteen [section] 5328(a) factors when arbitrating, for example, a dispute over a custody-exchange location[.]" **Id.** at 403. Moreover, pursuant to **D.K.**, *supra*, the trial court was not required to consider the relocation factors of section 5337(h). **Id.** at 476. Accordingly, Mother's third and final issue merits no relief.

Based upon the foregoing, we discern no abuse of discretion or error of law by the trial court in issuing its September 15, 2025, custody order. Accordingly, we affirm the court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/14/2026